UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROCHEL BRAUN,

                        Plaintiff,

       -against-

TD BANK, N.A.,

                      Defendant.

**MEMORANDUM & ORDER**

**25-CV-3686 (NGG) (JAM)**

NICHOLAS G. GARAUFIS, United States District Judge.

This is a civil action brought by Plaintiff Rochel Braun ("Braun") against TD Bank, N.A. ("TD"). Braun filed a complaint on July 3, 2025, alleging that TD had frozen her TD bank account and failed to return the money in her account. (Compl. (Dkt. 1) ¶¶ 1-2.) TD moved for a pre-motion conference ("PMC") to seek leave to file a Motion to Dismiss. (*See* Sec. Mot. for PMC (Dkt. 13).) However, during the PMC, TD instead asked for leave to file an interpleader deposit motion, requesting permission to deposit the funds from Braun's account with the court and be discharged from the action. (Mot. for Interpleader Deposit (Dkt. 16).)

Before the court is TD's interpleader deposit motion, supporting memorandum of law (Mem. in Supp. of Mot. for Interpleader Deposit ("Interpleader Mot.") (Dkt. 19)), Braun's Opposition, (Opp'n to Mot. for Interpleader Deposit ("Braun's Opp'n") (Dkt. 20)), and TD's Reply (Reply in Supp. of Mot. for Interpleader Deposit ("TD's Reply") (Dkt. 21)). For the reasons explained below, the court DENIES WITHOUT PREJUDICE TD's motion to interplead disputed funds.

## I. BACKGROUND

### A. Factual Background

In 2022, Braun maintained a bank account with TD ending in 8121 (the "8121 Account"). (Am. Compl. (Dkt. 11) ¶ 7.) From

1

October 2022 through January 2023, Braun deposited several checks into the 8121 Account, totaling approximately $224,315.20. (*Id.* ¶ 8.) Starting in November 2022, and continuing through January 2023, fraudsters allegedly gained access to the 8121 Account and withdrew thousands of dollars. (*Id.* ¶ 10.) By February 2023, TD reimbursed Braun for the fraudulent transfers and the 8121 Account had a balance of approximately $221,655.47. (*Id.* ¶ 11.) In May 2023, allegedly at the recommendation of TD representatives, Braun moved her funds to a different TD account ending in 4078 (the "4078 Account"). (*Id.* ¶ 12.) Over a period of several months, the 4078 Account was also allegedly targeted by fraudsters, and all the money in that account was fraudulently withdrawn. (*Id.* ¶ 13.) Braun notified TD of the fraud, and, after an investigation, TD reimbursed Braun approximately $219,904.91. (*Id.* ¶ 14.) However, on May 22, 2024, TD froze the 4078 Account without providing any explanation. (*Id.* ¶ 15.) Upon inquiring at a local branch, Braun was told she would receive a check in the mail for the money that was in the 4078 Account, but she never received the check. (*Id.* ¶ 16.) Braun still has not received the money that was in the 4078 Account. (*Id.* ¶¶ 18-19.)

### B.   Procedural Background

Braun filed her complaint against TD in this court on July 3, 2025. (*See* Compl.) On August 5, 2025, TD filed a request for a PMC for leave to file a motion to dismiss. (*See* First Mot. for PMC (Dkt. 9).) Thereafter, on August 20, 2025, Braun and TD jointly requested a stay of this action pending TD's anticipated motion to dismiss. (Mot. to Stay (Dkt. 10) at 1) On September 22, 2025, Braun submitted an Amended Complaint. (*See* Am. Compl.) Then, on October 10, 2025, TD filed a new request for a PMC for leave to file a motion to dismiss. (*See* Sec. Mot. for PMC.)

During the December 16, 2025 PMC, TD alleged that multiple financial institutions were claiming entitlement to the funds in

2

question, and requested leave to file a motion to interplead the funds it had frozen instead of its initially proposed motion to dismiss. (*See* PMC Tr. (Dkt. 23) at 6:11-8:11.) On February 20, 2026, TD submitted a memorandum to interplead approximately $219,895.91 (the "Disputed Funds") into the court registry. (Interpleader Mot.) TD claims that interpleader is warranted because it has identified multiple parties who may assert adverse claims to the funds held in the 4078 Account. (*Id.* at 1, 3-4.) Specifically, TD identifies Discover Financial Services ("Discover") as one such party, and asserts that Discover requested the return of $36,235.43 that "it determined was generated through suspected fraud." (*Id.* at 1, 3-4.) TD also provided a list of eight parties it identified as potential claimants to the funds. (Schall Aff. (Dkt. 17) at 4.) In Braun's Opposition, she claims that TD failed to satisfy the legal standard for interpleader because its list of potential claimants is "entirely speculative" and because TD has failed to identify a "real and reasonable" fear of multiple liability as to the funds. (Opp'n at 1.)

## II. LEGAL STANDARD FOR 28 U.S.C. § 1335 INTERPLEADER

An interpleader action typically proceeds in two stages: (1) the court determines if the requirements of 28 U.S.C. § 1335 ("Section 1335") are met, and, if so, relieves the interpleader plaintiff from liability; and (2) the court adjudicates the adverse claims of the remaining claimants.[1] *New York Life Ins. Co. v. Conn. Dev. Auth.,* 700 F.2d 91, 95 (2d Cir. 1983);[2] *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC,* ("*JPMorgan Chase*") 710 F. Supp. 3d 259, 268-69 (S.D.N.Y. 2024).

---

[1] Stage two is not relevant in the instant action because no claimants have asserted a claim before the court.

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted and all alterations are adopted.

3

The interpleader statute, 28 U.S.C. § 1335, confers original jurisdiction on federal district courts where (1) the interpleader plaintiff is in possession of a single fund of the value of $500 or more, (2) two or more adverse claimants of at least minimally diverse citizenship may or do lay claim to money of the value of $500 or more, (3) the interpleader plaintiff has deposited or will deposit such money into the registry of the court, and (4) the interpleader plaintiff shows that it has a real and reasonable fear of multiple liability or vexatious, conflicting claims. *See Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 150-51 (2d Cir. 2016); *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013). All of these elements must be satisfied for a district court to have jurisdiction. *See JPMorgan Chase*, 710 F. Supp. 3d at 270.

### A. Single Fund of the Value of $500 or More

Section 1335(a) requires that an interpleader plaintiff has in its possession money of the value of $500 or more. 28 U.S.C. § 1335(a).

### B. Two or More Adverse Claimants of Diverse Citizenship

For interpleader under Section 1335 (a)(1), there must be two or more "adverse claimants," who are of "diverse citizenship" and "are claiming or may claim to be entitled to [the fund]." 28 U.S.C. § 1335(a)(1).

#### 1. Serving Potential Claimants

Service of process on the adverse claimants is required for Section 1335 interpleader, and "[t]he interpleader statute provides for nationwide service of process, *see* 28 U.S.C. § 2361...." *JPMorgan Chase Bank, N.A. v. Maurer*, No. 13-CV-3302 (NRB),

2015 WL 4566686, at *6 (S.D.N.Y. July 27, 2015).[3] "[T]o obtain interpleader relief, a stakeholder must ensure that all of the potential claimants are joined in the action." *Liberty Mut. Fire Ins. Co. v. CitiMortgage, Inc.*, No. 20-CV-5839 (EKR) (ER), 2022 WL 5424790, at *3 (E.D.N.Y. July 21, 2022), *report and recommendation adopted*, 2022 WL 4483396 (E.D.N.Y. Sept. 27, 2022); *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, No. 18-CV-3293 (SJB), 2019 WL 3850030, at *2 (E.D.N.Y. July 1, 2019) (same); *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 46 (S.D.N.Y. 2015) (same).

Further, failure to properly serve all claimants can result in dismissal where those claimants are necessary to satisfy the diversity and adversity requirements of 28 U.S.C. § 1335. *See Allstate Ins. Co. v. Turner*, No. 01-CV- 6973 (DC), 2002 WL 531002, at *2 (S.D.N.Y. Apr. 8, 2002) (dismissing case because party creating diversity was not joined in Section 1335 action); *Metro. Life Ins. Co. v. Dumpson*, 194 F. Supp. 9, 11 (S.D.N.Y. 1961) (finding that the court "ha[d] no power to proceed with" the motion until adverse parties of diverse citizenship were joined in the action); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1265-66 (9th Cir. 1992) ("[A] party cannot create diversity by naming as a defendant a party who is not in fact brought into the lawsuit by service of process.").

### 2. Adversity of the Claimants

Generally, claimants are considered adverse to one another when recovery by one claimant necessarily precludes recovery by the

---

[3] The Supreme Court laid the groundwork for the necessity of service in *New York Life Insurance Co. v. Dunlevy*, 241 U.S. 518 (1916). There, the Court held that a claimant who was not served could not be bound by the court's adjudication. *Id.* at 522-23. Proceeding with an interpleader action despite failure to serve a claimant would allow that claimant to separately sue the stakeholder, effectively keeping open the possibility of multiple liability and undermining the purpose of interpleader.

other. *JPMorgan Chase*, 710 F. Supp. 3d at 271. The classic interpleader case is where two parties assert inherently conflicting legal claims to the same asset or funds, which generally means that the claims must be mutually exclusive. *See, e.g., Madison Stock Transfer*, 2019 WL 3850030, at *1. However, to find that claimants are adverse, it is sufficient that the funds involved are inadequate to fully satisfy all the claims being asserted.[4] *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 526 (1967); *PacNet Servs. Ltd. v. United States Dep't of the Treasury*, No. 17-CV-6027 (NGG) (LB), 2017 WL 11818023, at *1 (E.D.N.Y. Dec. 7, 2017) ("[D]efendants' interests are necessarily adverse to [intervening party] to the extent that the interpleader funds are insufficient to satisfy all claims."); Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1705 (3d ed. April 2026 update) ("It now also is settled that the claims need not be mutually exclusive in order to be adverse. Interpleader may be used whenever a limited fund is involved that could not fully satisfy all the claims being asserted.").

Such claims are sufficient because "it is in the interest of each claimant to defeat or diminish the recovery of every other claimant, and this antagonism satisfies the requirement of adversity." Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1705. Section 1335 interpleader functions even where potential claimants have not yet asserted a claim to the money in question. *See JPMorgan*

---

[4] The court notes that this interpretation does not fit neatly with the understanding that the "function of interpleader is to resolve claims for designated assets based on mutually exclusive theories rather than to adjudicate rival claims that are mutually exclusive only because of the limited size of the assets." *Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1070 (2d Cir. 1990). However, the *Ashton* court made its proclamation in dicta, and the court follows the Supreme Court's ruling in *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967), where it considered interpleader to be "properly invoked" in a case of insufficient funds that did not field mutually exclusive theories. The Wright & Miller treatise describes the uniform approach of the federal courts on this point.

6

*Chase*, 710 F.Supp.3d at 272. This is because the interpleader statute is "remedial and to be liberally construed, particularly to prevent races to judgment and the unfairness of multiple and potentially conflicting obligations." *Hapag-Lloyd Aktiengesellschaft*, 814 F.3d at 151 (quoting *Tashire*, 386 U.S. at 533).

### 3. Diversity of the Claimants

The federal interpleader statute requires minimal diversity among the claimants. *New York Life Ins. Co. v. Sahani*, 730 F. App'x 45, 49 (2d Cir. 2018) (summary order) (citing *Tashire*, 386 U.S. at 530). "Minimal diversity" is satisfied where there is "diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *Tashire*, 386 U.S. at 530. If there is no diversity under Section 1335, a court may dismiss the interpleader claim. *See Franceskin v. Credit Suisse*, 214 F.3d 253, 260 (2d Cir. 2000) (instructing lower court to dismiss a party's counterclaims in interpleader for lack of subject matter jurisdiction).

### C. Depositing Funds with the Court

Section 1335(a)(2) requires that the interpleader plaintiff deposit the disputed funds "into the registry of the court." However, "courts disagree over whether deposit is a prerequisite to jurisdiction or a condition of maintaining jurisdiction." *Sahani*, 730 F. App'x at 49; *compare Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 302 (S.D.N.Y. 2012) (saying "in this Circuit, a deposit with the court of the res in controversy or a bond is a jurisdictional prerequisite for statutory interpleader relief"), *with N.Y. Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 717 (E.D.N.Y. 2012) (finding that interpleader plaintiff had satisfied all jurisdictional requirements where the plaintiff had not yet deposited the fund with the court but had requested permission to do so), *and JPMorgan Chase*, 710 F. Supp. 3d at 274 n.5 (explicitly "declin[ing] to adopt [the] draconian approach" of requiring a deposit as a prerequisite for jurisdiction).

7

Even if a court takes a strict approach and construes the deposit as a prerequisite for jurisdiction, "a court may give the party an opportunity to comply before dismissing interpleader for failure to satisfy a jurisdictional requirement." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 397 (S.D.N.Y. 2006); *see also Am. Smelting & Ref. Co v. Naviera Andes Peruana, S.A.*, 182 F. Supp. 897, 898 (S.D.N.Y. 1959) (allowing interpleader plaintiff 30 days to deposit the funds with the court before granting interpleader defendant's motion to dismiss).

### D. Real and Reasonable Fear of Multiple Liability

The interpleader plaintiff must have a real and reasonable fear of double liability from the claimants. *See Wells Fargo Bank, N.A. v. Kings Tec Support Inc.*, No. 23-CV-4551 (KAM) (RML), 2023 WL 8189799, at *3 (E.D.N.Y. Nov. 27, 2023); *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010); *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993). Having a legitimate fear of multiple liability directed against a single fund has been called "the primary test for determining the propriety of interpleading the adverse claimants[.]" *Bank of Am., N.A. v. Morgan Stanley & Co. Inc.*, No. 10-CV-6322 (RJH), 2011 WL 2581765, at *3 (S.D.N.Y. June 24, 2011).[5] Consequently, "the requirements of the interpleader statute are satisfied if the stakeholder faces *even the prospect* of adverse claims being asserted against property in its possession." *JPMorgan Chase*, 710 F. Supp. 3d at 272 (emphasis in original).

---

[5] This is in line with the Supreme Court's concern that the first claimant to obtain a judgment might appropriate a disproportionate slice of the fund before fellow claimants can establish their claims. *See Tashire*, 386 U.S. at 533. In fact, the "difficulties such a race to judgment pose for the [interpleader plaintiff], and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy." *Id.*

Although anticipated future claims may be the basis for inter-pleader, interpleader is inappropriate when the plaintiff offers only the "barest speculation" that such claims will manifest. *Glen-clova Inv.*, 874 F. Supp. 2d at 302 (quoting *J.B.I. Indus., Inc. v. Suchde*, No. 99-CV-12435, 2000 WL 1174997, at *15 (S.D.N.Y. Aug. 17, 2000)). Interpleader motions are only denied when the potential claims are particularly far-fetched. *See J.B.I. Indus., Inc.*, 2000 WL 1174997, at *15; *see also Pine Run Props., Inc. v. Pine Run Ltd.*, No. 90-CV-6289 (PKL), 1991 WL 280719, at *10 (S.D.N.Y. Dec. 26, 1991) (denying interpleader where alleged claim had not been advanced by interpleader defendants, and plaintiffs offered only the "barest speculation" the "hypothesized" claim would manifest).

### E. Denying an Interpleader Motion

If a court finds that an interpleader plaintiff does not meet the legal standard, it may deny the motion without prejudice, allow-ing the movant to remedy the deficiencies and renew it. *See, e.g., Brighthouse Life Ins. Co. v. Spin Cap., LLC*, No. 23-CV-8570 (DEH), 2025 WL 1446401, at *4 (S.D.N.Y. May 20, 2025) (de-scribing prior denial without prejudice to renew "once all Defendants are served and have had the opportunity to appear"); *Raymond James & Assocs., Inc. v. Ellison*, No. 23-CV-6497 (EAW), 2024 WL 3982298, at *4-5 (W.D.N.Y. Aug. 29, 2024) (same).

## III. DISCUSSION

The court finds that TD has failed to comply with the statutory requirements of Section 1335. While TD is in possession of a fund greater than the minimum statutory amount, and adverse claims appear to exist, TD has (1) failed to deposit the disputed funds with the court, (2) failed to serve the interpleader claimants, (3) failed to make the required showing of diversity as to *any* claim-ant, and (4) failed to persuade the court that there is a real and reasonable fear of multiple liability.

9

### A.  Statutory Minimum and Adversity

#### 1.  Minimum Statutory Amount

The interpleader plaintiff must have in its possession money of the value of $500 or more to satisfy the statutory amount requirement of Section 1335. 28 U.S.C. § 1335(a). In the instant case, the fund in question is the 4078 Account that contained approximately $219,904.91 when TD froze it. (Am. Compl. ¶¶ 1, 15, 23.) TD has requested it be permitted to deposit approximately $219,895.91 into the court registry (Interpleader Mot. at 1.) As such, this requirement is satisfied.

#### 2.  Adversity

TD has also satisfied the required adversity between potential claimants. Claims or potential claims need not be paradoxical to be adverse; it is sufficient that the demands on the funds are incompatible with one another. *See, e.g., Tashire*, 386 U.S. at 531. This is true even where potential claimants have not yet asserted claims to the fund. *See id.* at 531-32.

Here, Discover has requested the return of $36,235.43. (Interpleader Mot. at 3-4.) Additionally, TD has identified another $290,466.58 that may be subject to competing claims. (*Id.* at 4.) However, TD froze the 4078 Account with approximately $219,904.91. (Am. Compl. ¶ 15.) As such, the sum of Discover's claim together with the additional potential claims ($326,702.01) is greater than the funds available ($219,895.91), thereby making the claims adverse.

### B.  Deposit of Funds

As TD has not yet deposited any funds with the court, the court denies interpleader. The court follows the interpretation of Section 1335(a)(2) that finds depositing funds to be a jurisdictional prerequisite. *See Glenclova Inv. Co.*, 874 F. Supp. 2d at 302; Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1716 (3d ed. April

10

2026 update) (describing the deposit as "jurisdictional" and without which the case "will not proceed"). However, the court, "give[s] [TD] the . . . opportunity to comply before dismissing" the motion. *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d at 397; *see also* Wright & Miller, § 1716 ("[T]he court generally will give the stakeholder a second opportunity to comply before dismissing the action.").

### C. Service

TD failed to bring interpleader defendants into the action before instituting the present motion. "In order to obtain interpleader relief, a stakeholder must ensure that all of the potential claimants are joined in the action." *Liberty Mut. Fire Ins. Co.*, 2022 WL 5424790, at *3; *see also Madison Stock Transfer, Inc.*, 2019 WL 3850030, at *2.

In the instant case, however, TD served neither Discover nor any of the parties it lists as potential claimants. They were not added before the instant motion, and do not appear on the docket. (*See generally*, Docket.) To proceed without these parties would violate Section 1335's "procedural safeguards, including an opportunity to appear, for those whose rights will be affected by the judgment." *Hodel v. Irving*, 481 U.S. 704, 728 (1987) (Stevens, J., concurring). Aside from the problem this creates regarding diversity jurisdiction—discussed below—the interpleader motion in its current form would fail to bar claims from any adverse claimants, leaving TD vulnerable to potential multiple liability.

### D. Diversity of Claimants

TD does not provide the court a basis on which to find that the claimants are diverse. As explained, statutory interpleader requires only diversity of citizenship between two claimants, and jurisdiction is not lost if other rival claimants are not diverse. *Tashire*, 386 U.S. at 530; *Sahani*, 730 F. App'x at 49. In this case,

11

TD lists eight parties that may have potential claims to the funds. (*See* Interpleader Mot. at 4.) In addition, TD asserts that Discover requested the return of $36,235.43 it determined was generated through suspected fraud. (*Id.* at 3-4.) However, TD falls short on two fronts.

First, TD did not serve any adverse claimants. As such, diversity jurisdiction cannot be satisfied because parties not properly served may not be considered for diversity of citizenship purposes. *See Dumpson*, 194 F. Supp. at 11; *see also Allstate Ins. Co. v. Turner*, No. 01-CV-6973 (DC), 2002 WL 531002, at *2-3 (S.D.N.Y. Apr. 8, 2002) (declining to consider subject matter jurisdiction satisfied where the only diverse party was unserved, had not asserted a claim, had shown no intent to do so, and would never be part of the case).[6]

Second, even if the court *could* consider the citizenship of unserved parties, TD did not speak to the citizenship of Discover or *any* of the potential claimants. *See Franceskin*, 214 F.3d at 255, 259-60 (holding that plaintiff had not proved diversity jurisdiction and ultimately dismissing counterclaims in interpleader for lack of subject matter jurisdiction); *Apostolidis*, 841 F. Supp. 2d at 717 (finding minimal diversity satisfied by allegations of citizenship in the complaint). Unfortunately, "[t]he problem in this case is not uncommon. . . . Too often [courts] hear [] cases in which diversity has not been properly alleged . . . . Sometimes, the omission was one that should have been obvious to any lawyer . . . ." *Franceskin*, 214 F.3d at 255-56. Such is the case here. TD's failure to adequately allege diversity under Section 1335

---

[6] While the Second Circuit has considered unserved defendants in its diversity jurisdiction analyses, *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133 (2d Cir. 2005), that rule of law does not extend to this case. In *USHA*, the unserved party had been named as a defendant in the case; here, the claimants are merely "potential." (Interpleader Mot. at 4.)

12

leaves the court without sufficient information to determine if it has subject matter jurisdiction.

### E.   Real and Reasonable Fear of Multiple Liability

Finally, TD fails to persuade the court that a real and reasonable fear of multiple liability exists. Such a fear need not be predicated on active claims against the stakeholder; even the prospect of adverse claims may be sufficient. *JPMorgan Chase*, 710 F. Supp. 3d at 272; *see also Pacnet Servs. Ltd. v. Off. of Foreign Assets Control of United States Dep't of the Treasury*, 521 F. Supp. 3d 181, 198 (E.D.N.Y. 2021), *appeal dismissed and remanded sub nom. PacNet Servs., Ltd. v. United States Dep't of the Treasury*, No. 21-CV-1069, 2022 WL 2561204 (2d Cir. July 8, 2022) (holding an "interpleader action is available to a plaintiff even though neither an action has been brought against nor a formal demand has been made on the plaintiff by some or all of the potential claimants"). Nevertheless, the fear may not be based on only the "barest speculation" of the interpleader plaintiff. *Glenclova Inv.*, 874 F. Supp. 2d at 302; *Triaxx Asset Mgmt.*, 2021 WL 1227052, at *22.

TD's interpleader allegations identify one actual and eight potential claimants. The court is not persuaded that TD has provided more than the "barest speculation" that such claims will manifest, and TD must provide the court greater detail to satisfy the standard for a real and reasonable fear of multiple liability.

### 1.   Potential Claimants

TD provided a list of eight parties it found may have competing claims to the funds, yet failed to provide specific information as to the actual existence of these claims. (*See* Schall Aff. at 4.) TD gave only the vague assertion that its investigation revealed additional transactions "evidencing similar indicia of fraud[.]" (*Id.* ¶ 14.) Likewise, the attached exhibits were nothing more than copies of the checks it had suspected to be fraudulent and provide nothing by which to measure whether there are truly any

underlying claims. (*See* Exhibits D-K to Schall Aff. (Dkts. 17-4 to 17-11).)

Also, "interpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund[.]" *New York Life Ins. Co. v. Galicia*, No. 20-CV-3005 (NGG) (RML), 2021 WL 346236, at *2 (E.D.N.Y. Feb. 2, 2021). Here, almost two years have passed since the most recent of the suspect transactions and no potential claimant from TD's list has come forward to assert a claim. Interpleader serves to protect the interpleader plaintiff from the difficulties posed by a "race to judgment" by the claimants, yet here there seems to be no race at all. *Tashire*, 386 U.S. at 533.

Even though the court does not analyze the merits of the competing claims when determining if an interpleader action is appropriate, it must assess if the interpleader plaintiff has a real and reasonable fear of multiple liability. *See Triaxx Asset Mgmt.*, 2021 WL 1227052, at *19. However, to dispel the notion that the existence of the competing claims is based on more than the barest speculation, the court must first evaluate whether there is any basis to the claims. TD has not provided the court sufficient information to do so.

### 2.  The Discover Request

TD represented to the court that multiple financial institutions were claiming entitlement to the funds in question, (*see* PMC Transcript at 6:11-8:11), but has not identified any *actual* claimants aside from Discover. Discover requested the return of $36,235.43 on or about March 25, 2025.[7] (Interpleader Mot. at

---

[7] Although Braun avers TD froze her account on May 22, 2024 (Am. Compl. ¶ 7)—10 months before the Discover request—TD asserts it froze the account only "[u]pon receipt of" the Discover request. (Interpleader Mot. at 3-4; *see also* Schall Aff. at 3.) The court requires TD to explain this discrepancy.

3-4.) This demand, together with Braun's claim for the full account amount, could establish a real and reasonable fear of multiple liability. *See JPMorgan Chase*, 710 F. Supp. 3d at 272 (holding the prospect of adverse claims is sufficient to serve as the basis for a real and reasonable fear of multiple liability); *Pacnet Servs.*, 521 F. Supp. 3d at 198 (allowing interpleader despite no formal demand having been made on the stakeholder); *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992) (finding a letter claiming ownership of the property in question "a sufficient claim [] to justify [interpleader plaintiff's] filing of the instant interpleader action").

Here, TD's lengthy delay in bringing this action undercuts any finding that its alleged fear is real or reasonable. *See Bank of Am.*, 2011 WL 2581765, at *3. TD moved twice in August and October of 2025 for a PMC to seek leave to file a motion to dismiss. (*See* First Mot. for PMC and Sec. Mot. for PMC.) Months later, at the eventual PMC on December 16, 2025, TD altered its plan and requested leave to file a motion to interplead the funds it had frozen. (*See* PMC Transcript at 6:11-8:11.) This delay casts doubt on a real fear of multiple liability, which should have prompted an immediate request to file a motion to interplead the funds. After all, Discover made its request on or about March 25, 2025, nine months before the PMC and four months before Braun filed suit (Interpleader Mot. at 3). In fact, one may even have expected TD to commence an interpleader action *before* Braun filed suit. *See, e.g., Metro. Life Ins. Co. v. Little*, No. 13-CV-1059 (BMC), 2013 WL 4495684, at *1 (E.D.N.Y. Aug. 17, 2013) (insurance company commencing interpleader action for policy proceeds before any claimant had filed suit).

This delay vitiates a finding of real fear of multiple liability. *See John Hancock Mut Life Ins Co v. Doran*, 138 F. Supp. 47, 49 (S.D.N.Y. 1956) (chiding interpleader plaintiff for failing to

"act[] with a reasonable degree of promptness and with reasonable diligence," and noting that "certainly within one month after receiving the claim" plaintiff should have decided whether to pursue interpleader). Interpleader is an equitable remedy and "[h]e who seeks equity must do equity." *Id.* at 50; *cf. A & E Television Networks, LLC v. Pivot Point Ent., LLC*, 771 F. Supp. 2d 296, 303-04 (S.D.N.Y. 2011) (finding one month an appropriate amount of time in which to file an interpleader motion).

## IV. CONCLUSION

As TD has (1) failed to deposit the disputed funds with the court, (2) failed to serve the interpleader claimants, (3) failed to make the required showing of diversity as to *any* claimant, and (4) failed to persuade the court that there is a real and reasonable fear of multiple liability with respect to these funds, the court DENIES WITHOUT PREJUDICE TO RENEW TD's interpleader motion.

SO ORDERED.


Dated:      Brooklyn, New York
            August 5 , 2026


                              s/Nicholas G. Garaufis, USDJ
                              _____
                              NICHOLAS G. GARAUFIS
                              United States District Judge

16